United States District Court
Southern District of Texas
**ENTERED**
November 29, 2021
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

No. 3:21-cv-44

STUART HERBST, *PLAINTIFF*,

v.

DEERE & COMPANY D/B/A JOHN DEERE COMPANY, ET AL., *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is Deere & Company's motion to dismiss Herbst's original complaint, H&E Equipment Services, Inc.'s motion to dismiss the original complaint, and Deere's motion to partially dismiss Herbst's amended complaint, all filed under Rule 12(b)(6). Dkts. 9, 12, 19. Having considered the parties' arguments, the pleadings, and the applicable law, the court grants in part and denies in part the motions to dismiss.

I

The plaintiff, Stuart Herbst, was supervising a construction site in Angleton on June 10, 2019, while employed by Noble Building & Development LLC, when he was allegedly injured by a John Deere 210G

Excavator. Dkt. 14 ¶¶ 6–7. Noble had leased the excavator, comprised of a rotating upper structure and a lower structure supported by geared tracks, from H&E. *Id.* ¶¶ 7–8. While Herbst "was standing near the excavator, the operator [another H&E employee] suddenly turned the upper structure of the excavator," striking Herbst and causing severe injury to his back. *Id.* ¶¶ 11–12. Herbst "was not alerted to the upper structure's movement because it lacked a swing alarm." *Id.* A swing alarm "alert[s] bystanders of rotating movement by the upper structure [digging arm, engine compartment, and operators cab]." *Id.* ¶ 10.

Herbst sued Deere and H&E, alleging strict products liability, negligent products liability, and breach of implied warranties of merchantability and fitness for a particular purpose.[1] Dkt. 14. Herbst also seeks attorneys' fees and punitive damages. Dkt. 14.

## II

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim is facially plausible when the pleaded facts allow the court to reasonably infer that the

---

[1] Herbst's original complaint contained a manufacturing-defect claim which has since been abandoned. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (finding plaintiff abandoned claim when she failed to defend it in a response to a motion to dismiss).

defendant is liable for the alleged conduct. *Id.* "The court does not 'strain to find inferences favorable to the plaintiffs' or 'accept conclusory allegations, unwarranted deductions, or legal conclusions.'" *Vanskiver v. City of Seabrook, Texas*, No. H-17-3365, 2018 WL 560231, at *2 (S.D. Tex. Jan. 24, 2018) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). Naked assertions and formulaic recitals of the elements of the claim will not suffice. *Iqbal*, 556 U.S. at 678. Even if the facts are well-pleaded, the court must still determine plausibility. *Id.* at 679. And though the court is limited to considering just the complaint and its attachments, it may take judicial notice of matters of public record. *Luman v. Diaz*, No. CV H-19-4920, 2020 WL 4818832, at *2 (S.D. Tex. Aug. 8, 2020).

### III

**a. Products-liability claims**

Under Texas law, a plaintiff can recover in a products-liability case under three theories: strict liability, negligence, and breach of warranty. *Romo v. Ford Motor Co.*, 798 F. Supp. 2d 798, 805 (S.D. Tex. 2011). Herbst asserts all three.

**i. Strict Liability**

Herbst raises design defect and marketing/failure-to-warn claims under a strict-liability theory against both defendants. Dkt. 14 ¶¶ 13, 28. A

plaintiff asserting a strict-liability cause of action must establish that: "(1) a product is defective; (2) the defect rendered the product unreasonably dangerous; (3) the product reached the consumer without substantial change in its condition from the time of original sale; and (4) the defective product was the producing cause of the injury to the user." *Syrie v. Knoll Int'l*, 748 F.2d 304, 306 (5th Cir. 1984). "A plaintiff may show that a product is defectively designed, manufactured, or marketed." *Romo*, 798 F. Supp. 2d at 806.

"The concept of defect is considered central to any products[-]liability action." *Rodriguez ex rel. Rodriguez v. Hyundai Motor Co.*, 944 S.W.2d 757, 769 (Tex. App.—Corpus Christi 1997), *rev'd on other grounds*, *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661 (Tex. 1999). "There can be no valid products[-]liability claim without a product which has a defect." *Patterson v. Rohm Gesellschaft*, 608 F. Supp. 1206, 1211 (N.D. Tex. 1985).

Moreover, "under a theory of strict liability, the defect must be the producing cause, which encompasses cause-in-fact, of the injury." *Id.* "Producing cause is defined as one 'that is a substantial factor that brings about injury and without which the injury would not have occurred.'" *Kiesel v. Rentway*, 245 S.W.3d 96, 99 (Tex. App.—Dallas 2008) (quoting *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 45 (Tex. 2007)).

For a design-defect claim, a plaintiff must show that (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery. *Timpte Indus., Inc. v. Gish,* 286 S.W.3d 306, 311 (Tex. 2009). The safer alternative design "must be reasonable, *i.e.,* that it can be implemented without destroying the utility of the product." *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 335 (Tex. 1998).

"A marketing defect occurs when a defendant knows or should have known of a potential risk of harm presented by the product but markets it without adequately warning of the danger or providing instructions for safe use." *Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.,* 299 S.W.3d 374, 384 (Tex. App.—Tyler 2009, pet. denied).

Taking the facts Herbst alleges in his amended complaint as true, the court holds that the strict-products-liability claims for the design and marketing/failure-to-warn defects against Deere and H&E are plausible. Herbst's amended complaint—as it pertains to these claims—does not include any plainly "conclusory" allegations, which the Supreme Court has described as allegations that amount to mere "labels and conclusions," are

"formulaic recitations of a statute," or are otherwise unsupported accusations. *Iqbal*, 556 U.S. at 678.

Herbst alleges he was injured by a piece of equipment leased from H&E, manufactured by Deere, that was unreasonably dangerous because of a design and/or a marketing/failure-to-warn defect stemming from its lack of a swing alarm. Herbst also pleads facts demonstrating the existence of a safer alternative design and allegations that the risks and dangers of heavy equipment lacking swing alarms were known or should have been known by both defendants. As a direct result of these alleged failures by Deere and H&E, Herbst alleges he was injured. Taken as true, these facts support a reasonable inference that Deere and H&E are liable for his damages.[2] The strict-products-liability claims survive the motions to dismiss.

## ii. Negligence

Herbst raises design-defect and marketing-defect/failure-to-warn claims against Deere and H&E under a theory of negligence as well. Dkt. 14 ¶¶ 20, 35. To recover under negligence, a plaintiff must show: "(1) the existence of a duty on the part of one party to another; (2) the breach of that duty; and (3) the injury to the person to whom the duty is owed as a

---

[2] Herbst amended his complaint to allege two exceptions under Texas Civil Practice & Remedies Code § 82.003(a) extending product liability to H&E, a non-manufacturing seller. Dkt. 14 ¶ 34. This is sufficient to survive H&E's motion to dismiss.

proximate result of the breach." *Dion v. Ford Motor Co.*, 804 S.W.2d 302, 309 (Tex. App.—Eastland 1991, writ denied). "The care taken by the supplier of a product in its preparation, manufacture, or sale is not a consideration in strict liability; this is, however, the ultimate question in a negligence action. Strict liability looks at the product itself and determines if it is defective. Negligence looks at the act of the manufacturer and determines if it exercised ordinary care in design and production." *Gonzales v. Caterpillar Tractor Co.*, 571 S.W.2d 867, 871 (Tex. 1978).

While a negligent-design claim requires a showing of a dangerous product, *Kallassy v. Cirrus Design Corp.*, No. 3:04-CV-0727N, 2006 WL 1489248, at *3 (N.D. Tex. May 30, 2006), in a negligent-marketing claim, a manufacturer's failure to warn of "the dangerous propensities of a product . . . may render an otherwise non-defective product unreasonably dangerous." *Romo*, 798 F. Supp. 2d at 807. "The adequacy of a warning is a question of fact for the jury but the existence of a duty to warn is a question of law." *Id.* Additionally, negligence causes of action in products-liability cases "require a showing of proximate causation—that is, a plaintiff must prove the breach of the duty was a cause-in-fact of the injury and that the defendant should have reasonably foreseen the injury." *Id.*

Herbst has met his pleading burden in "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Herbst has plausibly alleged facts that, taken as true, entitle him to relief: (1) Deere and H&E owed him a duty in the design, labeling, and sale of the excavator; (2) Deere and H&E breached this duty by failing to exercise reasonable care in the design of the excavator by not installing a swing alarm and/or not warning operators how to safely operate excavators in light of the fact it lacked a swing alarm; and (3) these failures were the proximate cause of Herbst's injury. The negligence claims against Deere and H&E survive the motion to dismiss.

### iii. Breach of Implied Warranties

Herbst's implied-warranty claims include both merchantability and fitness for a particular purpose. Dkt. 14 ¶ 42. As a threshold matter, however, Deere requests the court consider the Standard Warranty (disclaimer document) attached to its Rule 12(b)(6) motion because it "disclaims implied warranties." Dkt. 9 at 9.

"In determining whether to grant a motion to dismiss, the district court must not go outside the pleadings." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)). However, there is one limited exception

to this rule: A court may consider documents attached to a motion to dismiss if the documents "are referred to in the plaintiff's complaint and are central to the [plaintiff's] claims." *Collins*, 224 F.3d at 498–99. "A document is central to a claim when it is necessary to establish an element of the claim." *Pylant v. Cuba*, No. 3:14-CV-0745-P, 2015 WL 12753669, at *2 (N.D. Tex. Mar. 6, 2015) (internal quotation omitted).

The defendants argue that the disclaimer document is appropriate for the court's consideration at this stage because Herbst's claims "reference[] the implied warranty of merchantability when he claim[ed] Deere impliedly warranted the Excavator was safe for the uses for which it was designed and/or advertised." Dkt. 9 at 9. Moreover, Deere asserts that "an express warranty that disclaims or modifies implied warranties is a document 'central' to a breach of warranty claim." *Id.*

Herbst objects, arguing that a document that is central to a claim's defense does not fall under the narrow exception elucidated in *Collins*. *See, e.g., Scanlan*, 343 F.3d at 537 (finding trial court erred in considering document outside scope of complaint because the document, while referred to in complaint, was not central to claims and was "much more central to the [defendant's] defenses"). Herbst also argues that a "[Rule] 12(b)(6) motion[] is not the proper vehicle to obtain dismissal of a claim based on an

affirmative defense that relies on extraneous evidence beyond a complaint, as this process is reserved for summary judgment and trial." Dkt. 15 at 5. Finally, Herbst's objection to the introduction of the document at this stage is a substantial factor in considering the propriety of the court going beyond his complaint. *Collins*, 224 F.3d at 498–99.

Herbst does not explicitly refer to the disclaimer document in his live complaint, nor is it central to any of this claims. Such a document is distinctly at odds with his implied-warranty claims and goes only to the defendants' affirmative defenses. Because the disclaimer document does not sufficiently satisfy the *Collins* considerations, the court declines to consider it at this stage. Herbst's implied-warranty claims are considered in turn below.

### A.   Breach of Implied Warranty of Merchantability

The defendants move to dismiss Herbst's merchantability claim, arguing that the claim fails because Herbst does not adequately allege the excavator was unfit for its ordinary purpose. Dkt. 19 at 3.

"The elements of a cause of action for breach of the implied warranty of merchantability are . . . 1) the defendant sold or leased a product to the plaintiff; 2) the product was unmerchantable; 3) the plaintiff notified the defendant of the breach; and 4) the plaintiff suffered injury." *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007)

(internal citation omitted). A product is "unmerchantable" if it "cannot pass without objection in the trade," it is unfit for ordinary purposes, or it does not conform to the promises or factual affirmations on its label. *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 336 (Tex. App.—Tyler 2003, no pet.).

"To pass without objection, a product must be of a quality comparable to other products that are sold in that line of trade under the contract description." *Id*. "For a product to be unfit for ordinary purposes, it must have a defect, *i.e.*, the product lacks something necessary for adequacy." *Id*. That can occur when the product "does not accomplish the purposes for which it was manufactured, or when it is constructed in a manner which makes it 'unreasonably dangerous.'" *Id*. Finally, "a product is considered unmerchantable if it does not conform to the promises or affirmations of fact which are on the product's container or label." *Id*.

"In the implied[-]warranty[-]of[-]merchantability context, 'the word "defect" means a condition of the goods that renders them unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy.'" *Sanchez v. QuikTrip Corp.*, No. 3:18-CV-1337-B, 2019 WL 1380310, at *2 (N.D. Tex. Mar. 27, 2019) (quoting *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989)). This is markedly different

from the definition of 'defect' in strict-products-liability claims, where it means "unreasonably dangerous." *Id.* Accordingly, a "defect may render a product unreasonably dangerous in the strict[-]liability context, but may not render a product unfit for the ordinary purposes for which it is used." *Id.*

While Herbst has plausibly alleged that the excavator is unreasonably dangerous for a products-liability claim, he has not plausibly alleged that it is unfit for its ordinary purpose of excavating. This situation is comparable to the issue in *Sanchez* where the plaintiff alleged that "a dough-cutting machine that impales the finger of a person when that person cleans the machine renders it unfit for its purpose, *even if the machine in fact cuts dough.*" *Id.* at *2 (emphasis added). The *Sanchez* court disagreed, finding that for the purposes of an implied-warranty-of-merchantability claim, the plaintiff failed to state a claim because she did not allege that the product had "a defect or condition [that] rendered the dough-cutting machine unfit for its ordinary purpose." *Id.*

The dichotomy is instructive: the excavator can be both fit for its intended purpose (excavating, presumably) and unreasonably dangerous from a strict-products-liability standpoint. At this stage, Herbst has failed to meet his pleading burden for his implied-warranty-of-merchantability claim. It is therefore dismissed with prejudice.

### B. Breach of Implied Warranty of Fitness for a Particular Purpose

Next, the defendants argue that Herbst's implied-warranty-of-fitness claims should be dismissed because Herbst does not allege the excavator was being used for any non-ordinary purpose. Dkt. 19 at 4. "Under Texas law, an implied warranty of fitness for a particular purpose arises when 1) the seller has reason to know of a particular purpose for which the goods are required; and 2) the buyer is relying on the seller's skill or judgement to select goods suitable for that particular purpose." *Coghlan v. Aquasport Marine Corp.*, 73 F. Supp. 2d 769, 774 (S.D. Tex. 1999) (citing Tex. Bus. & Com. Code § 2.315).

An important caveat, however, is that the "particular purpose" must differ "from the usual and ordinary use of the goods." *Id.* The court in *Coghlan*, for example, held there was no implied warranty because resistance to deterioration is a characteristic generally desired by purchasers of fishing boats. 73 F. Supp. 2d at 774–75. Likewise in *Sipes v. Gen. Motors Corp.*, where the court held no implied warranty because the airbags at issue were purchased for the same use as they were designed. 946 S.W.2d 143, 158–59 (Tex. App.—Texarkana 1997, writ denied). *See also Miles v. Ford Motor Co.*, 922 S.W.2d 572, 586–87 (Tex. App.—Texarkana 1996), *rev'd on other*

*grounds*, 967 S.W.2d 377 (Tex. 1998) (no implied warranty because carrying and protecting passengers is a standard use of a vehicle); *Crosbyton Seed Co. v. Mechura Farms*, 875 S.W.2d 353, 365 (Tex. App.—Corpus Christi 1994, no writ) (no implied warranty because raising a commercial cash crop is the ordinary purpose of the seed).

In his live complaint, Herbst alleges the excavator was "unfit for use at construction sites." Dkt. 14 ¶ 42. If use at a construction site was not the usual and ordinary purpose for which the excavator at issue is used, Herbst has not pleaded it. Herbst has also not pleaded how the conditions at his construction site are particularly distinctive and that the defendants were aware of such unique circumstances.[3] Accordingly, his implied-warranty-of-fitness-for-a-particular-purpose claim is dismissed.

## b. Attorneys' Fees

The parties disagree over whether Herbst is entitled to seek attorneys' fees. To obtain attorneys' fees, "a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Lehman Bros. Holdings v. Cornerstone Mortg. Co.*, No. CIV.A. H-09-0672, 2009 WL

---

[3] *See, e.g.*, *Bob Davis Paint & Drywall v. Valspar Corporation et al*, No. 3:19-cv-216 (S.D. Tex. 2020 April 7, 2020) (holding implied-warranty-of-fitness claim survived motion to dismiss because the product—exterior paint—was used to paint the exterior of beachfront homes exposed to harsh conditions and thus not the ordinary use of the paint).

2900740, at *6 (S.D. Tex. Aug. 31, 2009) (quoting *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex. 1995)).

Herbst argues that he is entitled to attorneys' fees if he prevails as a consumer under the Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.50(d), for his implied-warranty claims. Dkt. 15 at 6–7. Because Herbst's implied-warranty claims have been dismissed, his request for attorneys' fees must fail. Accordingly, Herbst's request for attorneys' fees is dismissed.

### c. Punitive Damages

The parties likewise disagree over whether Herbst is entitled to seek punitive or exemplary damages. "Under Texas law, a plaintiff can recover exemplary damages for harm that results from gross negligence." *Lasslett v. Tetra Tech, Inc.*, No. 2:13-CV-072-AM-CW, 2015 WL 13805125, at *4 (W.D. Tex. Feb. 20, 2015). "'Reckless disregard' and 'gross negligence' are synonymous terms." *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex. 1981).

To recover punitive damages for gross negligence, "a plaintiff must show that (1) the conduct of the defendant involved 'an extreme degree of risk, considering the probability and magnitude of the potential harm to others' and (2) the defendant had an 'actual, subjective awareness of the risk involved . . . .'" *Lasslett*, 2015 WL 13805125, at *5 (quoting Tex. Civ. Prac. &

Rem. Code § 41.001(11)). The Texas Supreme Court's definition of gross negligence is instructive for this purpose:

> Gross negligence, to be the ground for exemplary damages, should be that *entire want of care* which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.

*Burk Royalty*, 616 S.W.2d at 920 (rejecting the "so slight a degree of care" rule) (emphasis added).

Herbst has recited the statutory elements satisfying the remedy of punitive damages (reckless disregard, extreme degree of risk, and subjective awareness), Dkt. 14 ¶ 24–26, but his amended complaint alleges no facts that plausibly permit recovery for punitive damages based on Deere or H&E's conduct.[4] Accordingly, Herbst's request for punitive damages is dismissed.

\* \* \*

For clarity, the following claims and remedies are dismissed:

- Strict-products-liability claims based on manufacturing defect
- Negligent-products-liability claims based on manufacturing defect
- All implied-warranty claims
- Attorneys' Fees
- Punitive Damages

The following claims survive:

---

[4] To the contrary, Herbst's complaint alleges enough safety concerns by Deere and H&E regarding the travel alarm, backover incidents, and bystander injury from expected movement from the lower structure as to make his claim of gross negligence (or the "entire want of care") implausible.

- Strict-products-liability claims against both defendants based on design and marketing/failure-to-warn defects
- Negligent-products-liability claims against both defendants based on design and marketing/failure-to-warn defects

Signed on Galveston Island this 29th day of November, 2021.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE